O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| JOSE MIGUEL LOPEZ, | ) | Case No. CV 09-8136-MLG |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Plaintiff Jose Miguel Lopez seeks judicial review of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the reasons discussed below, the decision of the Commissioner is REVERSED and the matter REMANDED for further proceedings consistent with this opinion.

//

//

//

**I. Factual and Procedural History**

Plaintiff was born on February 14, 1953 and was 53 years old at the time of the administrative hearing. (Administrative Record ("AR") 18, 46.) He has two years of education in El Salvador with no other specialized trade or vocational training. (AR 14, 83.) Plaintiff has relevant work experience as a truck driver, courier, punch press operator, construction laborer, and machine operator. (AR 14, 63.)

Plaintiff filed an application for DIB on September 30, 2005, alleging that he had been disabled since January 30, 2004, due to back and left shoulder injuries. (AR 13, 46-48.) Plaintiff's application was denied initially on January 23, 2006. (AR 39-44.) An administrative hearing was held on August 28, 2006 before Administrative Law Judge ("ALJ") Robert J. Grossman. Plaintiff, assisted by a non-attorney representative, testified through an interpreter. Vocational Expert ("VE") Barbara Miksik also testified. (AR 171-205.)

On June 14, 2007, ALJ Grossman denied Plaintiff's application for benefits. (AR 13-20.) The ALJ found that Plaintiff had not engaged in substantial gainful activity during the time period at issue. (AR 19.) The ALJ further found that the medical evidence established that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical and lumbar spines and impingement syndrome of the left shoulder. (Id.) However, the ALJ concluded that Plaintiff's impairments did not meet, or were not medically equal to, one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Id.) The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to "lift 50 pounds occasionally, lift and carry 25 pounds frequently, walk and stand 6 hours in an 8 hour work day, occasional climbing, balancing, stooping, kneeling, crouching and

crawling, and no more than occasional pushing, pulling, and overhead reaching with the left upper extremity." (Id.) The ALJ found that Plaintiff has the RFC to perform a significant range of light to medium work. 20 C.F.R. § 404.1567. (Id.) The ALJ determined that Plaintiff was unable to perform his past relevant work. (Id.) However, the ALJ found, based on the VE's testimony, that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as Surveillance System Monitor and Information Clerk. (Id.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 20.)

On August 17, 2009, the Appeals Council denied review (AR 6-8), and Plaintiff timely commenced this action for judicial review. On June 18, 2010, the parties filed a Joint Stipulation ("Joint Stp.") of disputed facts and issues, including: (1) whether the ALJ failed to provide Plaintiff an opportunity to examine the VE; (2) whether the hypothetical question posed to the VE was incomplete and inaccurate; (3) whether the ALJ failed to resolve a possible conflict between the Dictionary of Occupational Titles ("DOT") and the VE's testimony; (4) whether the ALJ's finding on Plaintiff's RFC was supported by substantial evidence and whether the ALJ failed to properly consider the treating physician's opinion; (5) whether the ALJ failed to properly develop the record; and (6) whether the ALJ improperly discredited Plaintiff's testimony. (Joint Stp. 3-4.) Plaintiff requests that this Court reverse and remand for an award of benefits, or in the alternative, reverse and remand for a new administrative hearing. (Joint Stp. 39.) The Commissioner requests that the ALJ's decision be affirmed. (Id.)

After reviewing the parties' respective contentions and the record as a whole, the Court finds Plaintiff's contention regarding the ALJ's

error in failing to pose a complete hypothetical to the VE because he did not include Plaintiff's language limitations and because the hypothetical failed to accurately reflect the RFC to be meritorious and remands this matter for further proceedings consistent with this opinion.[1]

**II. Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Social Security Commissioner's decision to deny benefits. The Court must uphold the Social Security Administration's disability determination unless it is not supported by substantial evidence or is based on legal error. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)(citing *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means more than a scintilla, but less than a preponderance; it is evidence that "a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute [its] judgment for that of the ALJ." *Robbins*, 466

---

[1] The Court will only address the ALJ's failure to pose a complete hypothetical to the VE in detail. However, as noted above, Plaintiff also contends that the ALJ made various other errors. The Court does not reach the remaining issues or decide whether these issues would independently warrant relief.

F.3d at 882.

### III. Discussion

The Court agrees with Plaintiff that the ALJ propounded an incomplete hypothetical to the VE because the ALJ did not include in the hypothetical Plaintiff's language limitations and because the hypothetical did not accurately reflect the RFC finding. (Joint Stp. 9.) The Court will address each of these issues in turn.

Because Plaintiff established that he was not able to perform his past relevant work, the Commissioner had the burden of showing that Plaintiff could perform other work that exists in significant numbers in the national economy. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006). The Commissioner can meet this burden in two ways: (1) through the testimony of a VE or (2) by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, App. 2, §§ 200.00-204.00 ("the grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).

Under the governing legal standard, "[i]n order for the testimony of a [VE] to be considered reliable, the hypothetical posed must include all of the claimant's functional limitations, both physical and mental, supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (internal quotation marks omitted)(citing *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997). However, the ALJ is not obliged to incorporate restrictions that were not supported by the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("The ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence.").

The ALJ elicited the following testimony from the VE in making the step five determination in this case:

Q: All right, now I have to ask you about another person. This person is also the – has also the same profile as the claimant as far as age, education, and work background. This person, however, has a different RFC .... I ask you to assume that the claimant is able to lift 50 pounds occasionally and 25 pounds frequently. He can stand and/or walk six hours out of an eight-hour day. He can sit for six hours out of an eight-hour day. He's limited with pushing and pulling with his left upper extremity. His postural functions of climbing, balancing, stooping, kneeling, crouching, and crawling are all limited to occasionally. He has some manipulative limitations. He is limited in reaching in all directions and working above shoulder level and overhead with his left arm at or below shoulder level to frequently. And above shoulder level and overhead, he's limited to occasionally in all of those directions with the left arm. He has some environmental limitations. He must avoid concentrated exposure near dangerous and unprotected machinery. And no significant mental deficiencies.

\*\*\*

Assuming he can't do any of his past jobs due to the limitations you mentioned, does that leave him with a residual functional capacity that fits with any other work that exists in the national economy?

A: Yes, and we have – just to clarify, Your Honor, we have

1        a little English ability, basic English ability?
2  Q:  No, in this hypothetical, I didn't address that issue.
3  A:  Well, I'm asking.
4  Q:  Thank you for mentioning it. I am going to say that since he is a naturalized citizen, we're going to presume that he has adequate ability in English language to communicate and to read and write at least well enough to get along at a basic level in our society.

(AR 194-197.)

Based upon this hypothetical, the VE identified two jobs in the national economy which Plaintiff could perform: Surveillance System Monitor (DOT 379.367-010) and Information Clerk (DOT 237.367-018). (AR 18, 197-200.) In the ALJ's written decision, he concluded that there were a significant number of jobs in the national economy that Plaintiff could perform "[b]ased on the testimony of the vocational expert ... [and] considering the claimant's age, educational background, work experience and residual functional capacity." (AR 208.) Relying on the VE's testimony, the ALJ specifically cited Surveillance System Monitor and Information Clerk as examples of such jobs. (Id.)

**A.   Language Limitations**

Plaintiff argues that the ALJ erred by failing to include Plaintiff's language limitations in the hypothetical to the VE. (Joint Stp. 10.) Plaintiff contends that he has a very limited ability to read, speak and write in English. (Joint Stp. 10; AR 176.)

A claimant's education is one of the factors used to assess whether the claimant can perform available jobs. *See* 42 U.S.C. § 423(d)(2)(A); "Education is primarily used to mean formal schooling or other training which contributes to [the claimant's] ability to meet vocational

requirements ...." 20 C.F.R. § 404.1564(a). "The term education also includes how well [the claimant is] able to communicate in English since this ability is often acquired or improved by education." 20 C.F.R. § 404.1564(b). "A claimant is not per se disabled if he or she is illiterate." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). However, "in order for an ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation." *Id.*

Here, the ALJ posed a hypothetical in which the individual had an "adequate ability" to read and write in English, a finding that is not substantially supported by the record. Plaintiff had only two years of education in El Salvador. (AR 176.) He required an interpreter at the administrative hearings and at various medical visits. (Joint Stp. 10-11, AR 171.) When questioned by the ALJ about how well he can read and write in English, Plaintiff responded, "I can write but basic." (AR 176.) When asked how well he speaks and understands English, Plaintiff answered, "Very little." (Id.) The evidence in the record points to the conclusion that Plaintiff is virtually unable to communicate in English, 20 C.F.R. § 404.1564(b)(5), which also makes him illiterate under the regulations. *Id.* § 404.1564(b)(1). *See Pinto*, 249 F.3d at 846 n.3 ("Illiteracy is subsumed under inability to communicate in English.") (quoting Soc. Ser. Rep. Ser. 855 Acquiescence Rul. 86-3(5) (1983-1991)). The ALJ's determination at step five was based in part on an educational level that was not supported by substantial evidence in the record, and therefore erroneous.

The ALJ's use of an incorrect educational level was not without consequence. The two jobs cited by the VE, Surveillance System Monitor and Information Clerk, which were also adopted by the ALJ in his

findings, require that the worker possess Level 3 Language Development skills. Appendix C of the DOT explains that Level 3 Language Development entails the following abilities:

> "Reading: Read a variety of novels, magazines, atlases, and encyclopedias. Read safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work. Writing: Write reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech. Speaking: Speak before an audience with poise, voice control, and confidence, using correct English and well-modulated voice."

The DOT lists the language requirements associated with a job for a reason. "The ability to communicate is an important skill to be considered when determining what jobs are available to a claimant. Illiteracy seriously impacts an individual's ability to perform work-related functions such as understanding and following instructions, communicating in the workplace, and responding appropriately to supervision." *Pinto*, 249 F.3d at 846. The evidence in this case does not support a finding that Plaintiff possesses even the minimal level of language aptitude that the jobs cited by the ALJ require.[2]

Defendant argues that Plaintiff must have an adequate ability to communicate in English because he has lived in the United States for 28 years, is a naturalized citizen, and testified that he writes,

---

[2] As a corollary argument, Plaintiff also contends that the ALJ erred by failing to inquire into a possible conflict between the VE's testimony and information provided in the DOT. (Joint Stip. 17-19.) However, this argument is without merit because the conflict here is not between the VE's testimony and the DOT, but rather between Plaintiff's ability to communicate in English and the requirements of the jobs identified by the VE.

understands and speaks basic English. (Joint Stp. 15.) Even if Plaintiff can communicate in "basic" English, this would nevertheless appear to be insufficient to perform the occupations identified by the VE, both of which require Level Three Language Development skills. Defendant also argues that Plaintiff must have "basic English literacy" because he was employed steadily until 2004 as a truck driver, courier, punch press operator, construction laborer, and machine operator. (Id.) However, Defendant makes no claim that any of these jobs required Level Three Language Development skills.

Accordingly, the matter must be remanded to the ALJ to determine Plaintiff's ability to read, write and speak English and to determine whether jobs exist in the local and national economy in significant numbers that Plaintiff is able to perform given his English language proficiency.

**B.   RFC Finding**

Plaintiff contends that the ALJ's hypothetical to the VE did not accurately reflect the RFC finding. For example, the ALJ's RFC finding limited Plaintiff to "... no more than occasional pushing, pulling ... with the upper left extremity" but the hypothetical question only stated, "... limited with pushing and pulling with his upper left extremity" without any qualification of "occasional." Also, the RFC finding limits Plaintiff's overhead reaching to "occasional" with his upper left extremity, but the hypothetical question only restricted reaching at shoulder level and overhead to "occasional" and reaching at or below shoulder level to "frequent." (Joint Stp. 13, AR 19, 195.) Defendant concedes that the ALJ "did not include the RFC limitation of occasional pushing and pulling with the upper left extremity." (Joint Stp. 15.) Accordingly, on remand, the hypothetical question posed by the

ALJ to the VE should accurately reflect Plaintiff's RFC.

## IV. Conclusion

For the reasons discussed above, the decision of the Social Security Commissioner is REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED: July 1, 2010

_____
MARC L. GOLDMAN
United States Magistrate Judge